| | |
|---|---|
| Jeffrey D. Ganz | **Hearing Date**: TBD |
| jganz@riemerlaw.com | **Hearing Time:** TBD |
| Steven E. Fox | |
| sfox@riemerlaw.com | |
| Brett J. Nizzo | |
| bnizzo@riemerlaw.com | |
| RIEMER & BRAUNSTEIN, LLP | |
| Seven Times Square | |
| New York, New York 10036 | |
| 212-789-3100 | |
| *ATTORNEYS FOR 62 MADISON LENDER, LLC AND* | |
| *NOMAD MEZZ LENDING, LLC* | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | |
| MADISON HOTEL, LLC, | Case No. 11-12560 (MG) |
| | |
| Debtor. | |

-------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | |
| MADISON HOTEL OWNERS, LLC, | Case No. 11-12334 (MG) |
| | |
| Debtor. | |

-------------------------------------------------------x

## MOTION OF 62 MADISON LENDER, LLC AND NOMAD MEZZ LENDING, LLC TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS

62 Madison Lender, LLC ("62 Madison") and Nomad Mezz Lending, LLC ("Nomad" and together with 62 Madison, the "Senior Lenders") hereby move this Court for issuance and entry of an order (a proposed form of which is annexed hereto as Exhibit "A"), pursuant to Section 1121(d) of the Bankruptcy Code (defined below), inter alia, terminating the Debtors' (defined below) exclusive periods to file a plan of reorganization (the "Exclusive Filing Period") and to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the

Exclusive Filing Period, the "Exclusive Periods"). In further support of this Motion, the Senior Lenders respectfully represent and set forth as follows:

## PRELIMINARY STATEMENT

1. The Debtors have submitted a joint plan of reorganization in the above-captioned cases that will not succeed because the Debtors do not have, and cannot raise, the $5.7 million to $6.7 million that the plan proposes to pay out to creditors on the effective date. The accompanying disclosure statement provides no insight into the source of these funds, the conditions upon which the funds will be advanced, or any other information that would suggest that the plan is based on anything more than unsubstantiated hope and conjecture. The failure of the Debtors to incorporate this basic, but critical, information is the best evidence that the Proposed Plan (defined below) has been interposed to delay, rather than to advance, the resolution of these chapter 11 cases.

2. These delay tactics are consistent with the approach taken by the Debtors with respect to the Senior Lenders' debt during the two-year period leading up to their bankruptcy filings. Indeed, since November 2009, the Debtors have failed to make even one payment to the Senior Lenders under either set of loan arrangements. These bankruptcy cases represent little more than the next step in what has been a long-standing, two party dispute. The Debtors' tactics should not be allowed to continue in this forum and, absent documentary evidence demonstrating the Debtors' clear ability to make the required payments, the Court should immediately terminate exclusivity and allow the Senior Lenders (and any other party) to submit their own proposed plan.

3. The Senior Lenders are prepared to file their proposed disclosure statement and plan (the "Lenders' Plan") upon allowance of this motion and the Lenders' Plan is not subject to

any funding contingency or other condition outside of their control, but instead will be premised upon a sale of the Debtors' principal asset – the MAve Hotel.[1] Permitting the Senior Lenders to file a plan would insure that the confirmation process upon which the parties are about to embark would have at least one achievable result and would prevent the parties from wasting the time associated with pursuing and contesting confirmation solely of the Debtors' Proposed Plan, only to find that the Debtors' themselves are unable to fulfill their own conditions precedent.

4. The Senior Lenders believe that the Lenders' Plan, once confirmed, will provide significant advantages over the Debtors' Proposed Plan and will mitigate the risks associated with the recovery prospects for secured and unsecured creditors. At a minimum, the Lenders' Plan will provide the Debtors' creditors with a real, viable, and confirmable alternative to the Debtors' Proposed Plan, thereby allowing those creditors the opportunity to weigh in on what is essentially a two-party dispute. For these reasons and those that follow, the Senior Lenders urge the Court to terminate the Debtors' Exclusive Periods and thereby allow the Senior Lenders to pursue confirmation of the Lenders' Plan.

## **FACTS**

5. On May 16, 2011, Madison Hotel Owners, LLC (the "Owner") commenced the above-captioned case by filing a voluntary petition for relief before this Court under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The Owner's only asset is the ownership of 100% of the limited liability company interests ("LLC Interests") in Debtor Madison Hotel, LLC. The Owner is a shell entity created for the sole purpose of

---

[1] Out of an abundance of caution, the Senior Lenders have limited the description of Lenders' Plan in this Motion to avoid the possibility that an extensive description could be mischaracterized as an improper solicitation in contravention of Section 1125 of the Bankruptcy Code.

owning those LLC Interests, has no other assets, conducts no other business, has no employees, and generates no cash flow.

6. On May 26, 2011, Madison Hotel, LLC (the "Hotel", and together with the Owner, the "Debtors") commenced its Chapter 11 case by filing a separate voluntary petition for relief before this Court. The Hotel is the owner and operator of a boutique hotel located at 62 Madison Avenue, New York, NY, which is operated under the name "The MAve Hotel." The hotel consists of 72 rooms located on 12 floors

7. Since the commencement of these Chapter 11 cases, the Debtors have continued in the possession, management and operation of their respective businesses in accordance with Section 1107 and 1108 of the Bankruptcy Code.

8. As of the date hereof, no trustee or examiner has been appointed, and no official unsecured creditors' committee has been appointed by the U.S. Trustee; however, prior to the commencement of these cases Margaret H. Mayo was appointed by the New York State Supreme Court as receiver (the "Receiver") to manage the assets and operation of the Hotel. By informal agreement among the Senior Lenders and the Debtors, the Receiver remains in place and continues to manage the affairs and operations of the Hotel.

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (L). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief sought in this Motion is Section 1121(d)(1) of the Bankruptcy Code.

10. In accordance with Section 1121(a) of the Bankruptcy Code, the Owner's Exclusive Periods are scheduled to expire on September 13, 2011 and November 14, 2011,

respectively. The Hotel's Exclusive Periods are scheduled to expire on September 23, 2011 and November 22, 2011, respectively.

11. Shortly after the Owner filed its bankruptcy petition, Nomad filed a Motion to Dismiss the Owner's bankruptcy case because of its concerns over that Debtor's ability to reorganize [Docket 10]. That motion was denied on June 21, 2011, after the Debtors – in open Court – asserted that they had a buyer for the Hotel, that the sale would close on or before September 1, 2011, that the Debtors would reinstate the debts held by the Senior Lenders, and that all other creditors would be paid in full.

12. Subsequently, in a Status Report dated July 13, 2011 and during a status conference conducted on July 18, 2011, the Debtors advised the Court that there would be no sale of the Hotel, but that the Debtors would seek to present a plan of reorganization premised upon a "cram down" of 62 Madison's secured debt and a payment in full, in cash of Nomad's debt. The source of funds for repayment of the Nomad debt was not disclosed, but Debtors' counsel advised the Court that the individual owners of the Owner had the wherewithal and the intention to make that payment if they were unable to raise it otherwise. This fact is significant in light of the failure of the Debtors or their principals (who are guarantors) to pay any sum to the Senior Lenders since November 2009.

13. On the last day of July 2011, the Debtors filed the Proposed Plan which contemplates that the Nomad debt will be paid in full, in cash on the effective date of the plan. Based on the Proof of Claim filed by Nomad, that payment will be no less than $5,422,685.05 million. The Proposed Plan also commits to paying 25% of all allowed unsecured claims on the effective date. According to the Debtors' proposed disclosure statement, the pool of unsecured creditors contains total claims in a range of between $1,113,689 and $5,234,950. Accordingly,

the Proposed Plan requires the Debtor to pay the unsecured creditors between $278,422.25 and $1,308,737.50 on the effective date. Excluding all other funding requirements of the Proposed Plan, the Debtors will, therefore, be required to pay between $5,701,107.30 and $6,731,422.55 in order to emerge from bankruptcy. The Debtors do not have anywhere close to this amount of cash on hand and the proposed disclosure statement fails to provide any insight into from where these funds will materialize.

## RELIEF REQUESTED

14. Upon the request of a party in interest and after notice and a hearing, the Court may terminate a debtor's exclusive periods to file a plan and solicit acceptances for cause shown. See 11 U.S.C. § 1121(d)(1). By this Motion, the Senior Lenders request that the Court terminate the Debtors' Exclusive Periods.

## THE COURT SHOULD TERMINATE
## THE DEBTORS' EXCLUSIVE PERIODS

A. **Cause Exists to Terminate the Exclusive Periods**

15. Section 1121 provides the debtor a limited period of time within which it will have the exclusive right to propose a plan of reorganization. "The exclusivity period affords the debtor the opportunity to negotiate the settlement of its debts by proposing and soliciting support for its plan of reorganization without interference – in the form of competing plans – from its creditors or others in interest." In re Geriatrics Nursing Home, Inc., 187 B.R. 128, 131-32 (D.N.J. 1995). However, in granting Chapter 11 debtors this exclusive right to propose plans, Congress sought to balance the debtor's interest in the survival of its company against the creditors' interest in receiving timely satisfaction of their claims. See id. at 32 (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 231-232 (1978), reprinted in 1978 U.S.C.C.A.N. 5787).

16.     As a result, when cause exists, Congress provides the bankruptcy courts with the ability to reduce the exclusivity periods upon request of a party.  See 11 U.S.C. § 1121(d)(1).  As the bankruptcy court observed in Adelphia, in determining whether cause exists and, in turn, assessing whether modifying exclusivity is appropriate in a particular case or circumstance, the primary consideration should be whether doing so would facilitate materially moving the case forward.  In re Adelphia Communications Corp., 352 B.R. 578, 590 (citing In re Dow Corning Corp., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997)); accord In re Friedman's, Inc., 336 B.R. 884, 889 (Bankr. S.D. Ga. 2005).  Reviewing the legislative history of Section 1121 of the Bankruptcy Code, the Fifth Circuit Court of Appeals opined that "any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121…. Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors."  United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d. 363, 372 (5th Cir. 1987) (*en banc*), aff'd, 484 U.S. 365 (1988).

17.     The Debtors' Proposed Plan will not move these cases forward in any material way.  The Debtors do not have the cash needed to fund their effective date commitments under the Proposed Plan and the proposed disclosure statement is bereft of any information to support the suggestion that this magnitude of funds could be raised by the Owner or its members.

18.     Specifically, Section 2.2 of the Proposed Plan requires payment in full of Nomad's secured claim in cash on the Effective Date, with interest at the contract rate.  In accordance with its duly filed, secured proof of claim, Nomad's claim against the Owner was in the amount of $5,422,685.05 as of the date the Owner filed its bankruptcy petition.  When combined with the other unsecured claims, the initial funds required by the Debtors to emerge

from bankruptcy will exceed between $5,701,107.30 and $6,731,422.55. The Debtors do not have this sum in cash or liquid assets. The lone statement they make in support of their purported ability to make these payments is that, "[t]he Debtors intend to fund the Plan through cash on hand held by the Receiver of the Property, operating revenue generated by the operations of Hotel and by *additional amounts to be advanced by Owner and its members*." (Sec 4.1, Proposed Plan) (emphasis added). There is no further discussion or details provided in the Proposed Plan regarding the ability of the Owner and its members to fund the Proposed Plan. The Disclosure Statement is equally inadequate in its discussion of the Debtors' ability to provide the required funding.

19. Given the facts at hand, were the Court to permit the Debtors to retain their exclusive control over the plan process, creditors will be held hostage to the Proposed Plan, even though at this juncture the viability of that plan is wholly illusory because the Debtors do not have the resources necessary for implementation. Under these circumstances, if the Debtors prove unable to provide the necessary funding or if the Debtors ultimately fail in their efforts at cramming their plan down on 62 Madison, then it will be the creditors who will be left to pick up the pieces and bear the expense of the Debtors' ill-fated strategies. While the Senior Lenders may be unable to prevent the Debtors' from pursuing this wasteful course of action, their request to terminate the Exclusive Periods is intended to insure that there is at least one viable option available to the creditors at the conclusion of the confirmation process. For these reasons, the Senior Lenders submit that the best interests of the creditors will be served by a termination of the Debtors' Exclusive Periods.

B.  **The Adelphia Factors**

20. A review and application of the Adelphia factors provides additional bases for terminating exclusivity in the instant case. In Adelphia, the Bankruptcy Court for the Southern District of New York noted the following factors are relevant to determining whether to modify a debtor's exclusivity:

   a. The size and complexity of the case;

   b. The necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

   c. The existence of good faith progress toward reorganization;

   d. The fact that the debtor is paying its bills as they become due;

   e. Whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   f. Whether the debtor has made progress in negotiations with its creditors;

   g. The amount of time which has elapsed in the case;

   h. Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

   i. Whether an unresolved contingency exists.

Adelphia, 352 B.R. at 587; see also In re Dow Corning Corp., 208 B.R. 661, 664-665 (Bankr. E.D. Mich. 1997) (invoking the same factors); In re Sportsman's Link, Inc., 2007 WL 7023830 (Bankr. S.D. Ga.) (same factors).

21. Not all of the Adelphia factors "are relevant in every case …. It is within the discretion of the bankruptcy court to decide which factors are relevant and give appropriate weight to each." In re Hoffinger Indus., Inc., 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003); see also Dow Corning, 208 B.R. at 670 (this decision "is a practical call that can override a mere toting up of the factors").

22. Nevertheless, in this case, as set forth below, all of the <u>Adelphia</u> factors demonstrate that "cause" exists to terminate the Exclusive Periods:

    a. <u>These Cases Are Neither Large Nor Complex</u>. As the Court has observed, these cases are essentially a two-party dispute between the Debtors and the Senior Lenders in what amounts to a single-asset real estate case. Under these circumstances, the Debtors have had more than sufficient time to obtain committed funding from a viable source and to submit a Proposed Plan that is something more than illusory. The Debtors have also had more than sufficient time to engage their principal creditors in good faith negotiations toward a consensual plan(s). Instead of doing that, however, the Debtors have filed a Proposed Plan that requires a large cash payment, but fails to identify a viable funding source.

    b. <u>The Debtors Have Had Sufficient Time to Propose a Plan</u>. In these cases, given the absence of size or complexity, this Court obtained the Debtors' commitment to file a plan by July 31, 2011. Under pressure from the agreed upon deadline, the Debtors filed a Proposed Plan that is entirely speculative due to the absence of committed funds necessary for implementation of the Proposed Plan. Rather than use the Exclusive Periods effectively and efficiently to obtain committed plan funding and to conduct good faith negotiations with their principal creditors, the Debtors instead proposed settlement terms that had been previously rejected by the Senior Lenders. They have now presented a proposed plan that cannot be achieved and reflects no recognition of the level of risk associated with the Debtors' inherently poor financial condition. Pursuing this path in the absence of a reasonable, achievable alternative will undoubtedly commit these estates to long delays and substantial, yet avoidable costs, with no productive results in sight.

c.      <u>There Has Not Been Good Faith Progress Towards Reorganization</u>. In the short time that the Debtors' Chapter 11 cases have been pending before this Court, the Debtors have changed the direction of these cases, leading the Court and the parties in interest down one potential path (a sale of the hotel combined with a reinstatement of the Senior Lenders' debt), followed more recently by a switch to another, entirely different path (a cramdown plan). At no time during the pendency of these cases have the Debtors attempted to engage the Senior Lenders in what could be considered "good faith" negotiations in respect of a consensual plan construct. Instead, the Debtors have made settlement proposals that they knew were unacceptable to the Senior Lenders because those same proposals had already been rejected prior to their filing of the Debtors' bankruptcy petitions. The Debtors now contemplate a cramdown plan, requiring a huge infusion of cash, but fail to provide any evidence that this cash is attainable. Absent confirmation of committed plan funding, the Debtors' Proposed Plan will most assuredly result in fractious, time-consuming and costly litigation. The Debtors' abandoning of their fiduciary duties in this respect is not indicative of good faith progress toward reorganization.

d.      <u>There are Limited Prospects for a Viable Debtor-Sponsored Plan</u>. The facts appear plain here that there is limited, or no, reasonable prospect for a viable Debtor-sponsored plan in these Chapter 11 cases. Instead, in the absence of committed third party funding, the Debtors' have filed a Proposed Plan that they are presently unable to implement. This highly speculative approach to the plan process will likely lead to wasteful, time-consuming and costly plan-related litigation.

e.      <u>There Has Been No Progress in Plan Negotiations</u>. The Debtors have not made progress in negotiations with their creditors. As noted above, these cases are essentially a two-party dispute between the Debtors and the Senior Lenders in what amounts to a single-asset

real estate case. Notwithstanding the simplicity of the capital structure and the limited number of parties with whom the Debtors have to negotiate, the Debtors have instead determined to ignore their responsibility to negotiate toward a consensual plan in favor of a contested confirmation process.

        f.    <u>There are No Unresolved Contingencies</u>. The only unresolved contingencies are those that have been self-manufactured by the Debtors due to their inability to demonstrate the existence of the funding necessary to implement the Proposed Plan. There are no unresolved contingencies that would preclude or delay the Debtors from engaging in good faith plan negotiations, or from promulgating a consensual plan here. Instead, the only impediment is the Debtors' seeming unwillingness to engage those parties in any meaningful negotiations over a plan.

**C.    Termination of the Exclusive Periods Will Not Prejudice the Debtors**

23.    The termination of the Exclusive Periods to allow the filing of the Lenders' Plan will <u>not</u> prejudice the Debtors because they will retain their ability to propose and attempt to confirm the Proposed Plan. <u>In re Mother Hubbard, Inc.</u>, 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993). In this regard, courts have consistently recognized that a debtor is not harmed when a creditor is allowed to file a competing plan. <u>See</u>, <u>e.g.</u>, <u>In re R.G. Pharmacy, Inc.</u>, 374 B.R. 484, 488 (Bankr. D. Conn. 2007) ("The fact that the debtor no longer has the exclusive right to file a plan does not affect its concurrent right to file a plan."). The risk that another party may file a plan while the Debtors are developing their plan is a risk that Congress intended. <u>See</u>, <u>e.g.</u>, <u>In re All Seasons Indus., Inc.</u>, 121 B.R. 1002, 1005 (Bankr. N.D. Ind. 1990) ("The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended.").

24. Terminating the Exclusive Periods at this juncture does not sound a "death knell" for the Debtors' reorganization. Instead, it merely "affords creditors their right to file [a] plan; there is no negative effect upon the debtor's co-existing right to file its [plan]." In re All Seasons Indus., Inc., 121 B.R. at 1005. Indeed, allowing creditors to consider the Lenders' Plan will encourage any and all plan proponents, including the Debtors, to make their plan proposals as attractive to creditors as possible with the objective of garnering creditor support prior to solicitation. In fact, the prospect of competing plans may encourage the Debtors to bring some substance to the Proposed Plan by finding a viable source of funding. It will certainly have the benefit of allowing the Senior Lenders to present the Debtors' creditors with an achievable, confirmable plan of reorganization to select as an alternative.

25. Accordingly, the Debtors will suffer no prejudice by the termination of the Exclusive Periods. On the contrary, terminating the Exclusive Periods is in the best interests of the Debtors' estates, as it will promote a competitive plan process that will enable creditors to vote for the plan that best maximizes their recoveries.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Senior Lenders respectfully request that the Court (i) terminate the Debtor's Exclusive Periods; (ii) allow the Senior Lenders to file the Lenders' Plan and the requisite disclosure statement; and (iii) grant such further relief as the Court deems just and proper.

Dated: August 5, 2011
       New York, New York

                                        Respectfully submitted,

                                        RIEMER & BRAUNSTEIN LLP
                                        *Counsel to 62 Madison Lender, LLC and*
                                        *Nomad Mezz Lending, LLC*

                                        By: */s/ Jeffrey D. Ganz*
                                             Jeffrey D. Ganz
                                             Steven E. Fox
                                             Brett J. Nizzo
                                             Times Square Tower
                                             Seven Times Square, Suite 206
                                             New York, New York 10036
                                             Tel.: (212) 789-3100

# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                    Chapter 11

MADISON HOTEL, LLC,                                      Case No. 11-12560 (MG)

       Debtor.
------------------------------------------------------------x
In re                                                    Chapter 11

MADISON HOTEL OWNERS, LLC,                               Case No. 11-12334 (MG)

       Debtor.
------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE TERMINATING THE DEBTORS' EXCLUSIVITY

UPON consideration of the motion (the "Motion") of 62 Madison Lender, LLC ("62 Madison") and Nomad Mezz Lending, LLC ("Nomad", and together with 62 Madison, the "Senior Lenders"), creditors and parties in interest herein, for entry of an order pursuant to 11 U.S.C. § 1121(d), inter alia, terminating the above-captioned Debtors' exclusive periods to file a plan of reorganization and to solicit acceptances thereof, the Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. 28 U.S.C. §§ 157 and 1334(b); (ii) this is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interest of the Senior Lenders, the Debtors' estates, their creditors and other parties-in-interest; (iv) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

NOW THEREFORE, it is hereby

16

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Debtors' exclusive periods to file a plan of reorganization and to solicit acceptances thereof, as set forth in 11 U.S.C. § 1121, are hereby terminated effective immediately.

Dated: New York, New York
_____ \_\_, 2011

_____
Honorable Martin Glenn
United States Bankruptcy Judge

1359146.8